**CITY OF LADUE, Plaintiff/Respondent,**

v.

**Stephen ZWICK and Robin Zwick, Defendants/Appellants.**

**No. 67140.**

Missouri Court of Appeals, Eastern District, Division Two.

June 30, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 14, 1995.

Application to Transfer Denied Sept. 19, 1995.

Frank Susman, Joy D. McMillen, Susman, Schermer, Rimmel & Shifrin, L.L.C., St. Louis, for appellants.

F. Douglas O'Leary, Moser and Marsalek, P.C., St. Louis, for respondent.

PUDLOWSKI, Judge.

This is an appeal from an injunction ordered by the circuit court on petition of the City of Ladue (City) to require the removal of a tennis court constructed on landowners' lot without a building permit. We affirm.

In 1989 landowners began construction of a tennis court on their residential lot in Ladue, Missouri. On June 3, 1991, Ladue's Deputy Building Commissioner advised landowners that they were in need of a building permit for the structure. The first volley occurred when the Deputy Commissioner denied landowners' application for a permit on the basis that its location near the edge of the lot violated Ladue's 50' setback requirement. Landowners raised no challenge to this administrative denial of the permit.

Rather, they applied to Ladue's Zoning Board of Adjustment (Board) for a variance permit. The Board denied landowners a variance after a hearing on October 28, 1991. On June 22, 1992, the St. Louis County Circuit Court affirmed the denial of the variance. Landowners then appealed the circuit court's decision to this court. On May 4, 1993, we affirmed the denial of the variance permit in *Zwick v. Bd. of Adj. of Ladue,* 857 S.W.2d 325 (Mo.App.E.D.1993).

The City then served a summons to the landowners in the instant contest for an injunction to require removal of the tennis court. On June 27, 1994, Hon. Robert L. Campbell of the St. Louis County Circuit Court granted an injunction and summary judgment in favor of the City. Landowners now protest. Their original brief alleges two sources of error. First, that the trial court erroneously construed Ladue's Zoning Ordinance No. 1175 (ordinance) to require their tennis court to be located inside of the 50' setback line, where this is impossible on their lot. Second, they allege that the trial court erred in finding that the tennis court violated the setback requirements because the tennis court, itself, constitutes "yard space."

The City claims *res judicata* in this action. Said claim has no merit.

The City's motion for dismissal for failure to raise error by the circuit court was rendered moot by landowner's filing a supplemental brief out of time with court permission.

■ Addressing the merits, we also disagree with landowners' allegation that the

trial court erred in applying the 50′ setback requirement to their tennis court.

Section V. of the ordinance, "HEIGHT AND AREA REGULATIONS," is divided into four subsections, A.—D. Subsection A., "Maximum Height Limits," and subsection D., "Exceptions to Lot Area," are not relevant to the present dispute. Subsection B. is tabular, and reads, in part:

B. *Yard and Lot Area Requirements*

(1) *Setback Requirements and Lot Area for Buildings in All Districts*

| District | Minimum Depth of Front Yard | Minimum Width of Side Yard | Minimum Depth of Rear Yard | Minimum Lot Area |
|---|---|---|---|---|
| B | 50 ft. | 50 ft. | 50 ft. | 1.8 Acre |

Subsection C. reads, in part:

C. *Additional Area Requirements*

The minimum yards, frontages and lot area requirements established above may be modified as follows:

(1) *Yards—General*

(a) Every part of a required yard shall be open from its lowest point to the sky unobstructed, except for the ordinary projection of sills, belt course, cornices, buttresses, ornamental features, and eaves; provided, however, that none of the above projections shall extend into a minimum side yard more than 24 inches.

(b) No accessory building or structure shall be located in a required front, side or rear yard, except for permitted fences, driveways and sidewalks and additional parking spaces other than the required parking spaces as established in Sec. VI, C(2). The total area of parking spaces and driveways shall not exceed 30 percent of the front yard, with the remaining parts of the required front yard devoted entirely to landscaped area.

Ordinance, § V.

Landowners contend that the 50′ setback requirement for front, side and rear yards in subsection B. only apply to "buildings" and not to tennis courts, which are "structures." We agree with landowners on this limited point. The tennis court, itself, carries no setback requirements.

However, the nature of the violation is that the tennis court intrudes upon the residence building's required side and rear yards. In essence, the City alleges that the location of the tennis court reduces the side yard of the house from 50′ to approximately 1′, and the rear yard from 50′ to approximately 44′. Section XII. of the ordinance defines "yard" as: "an open space on the same lot or plat of ground with a building, unoccupied and unobstructed from the ground upward, except as otherwise provided herein." We agree with the City that placing the structure on the residence building's required yard impermissibly reduced the "unoccupied and unobstructed" 50′ yard depth.

The above argument in no way depends on the application of § V.C. Section V.C. *may* modify the requirements of § V.B., but these modifications are not automatic: "The minimum yards, frontages and lot area requirements established above *may* be modified as follows:" (our emphasis). Ordinance, § V.C. The use of the term "may" instead of "shall" connotes a conditional and not a mandatory requirement. *See S.J.V. by Blank v. Voshage*, 860 S.W.2d 802, 804 (Mo.App.E.D.1993). No modification or variance has been granted to date. Therefore, we hold that the unmodified § V.B. provides the sole yard depth requirements in relation to this lot and its interpretation is the only question before us. As outlined above, § V.B. requires 50′ of yard depth in the side and rear yards of residential buildings, and the tennis court violates these yard requirements.

■ Finally, landowners argue that § IV.A.(1)(d) of the ordinance permits tennis courts and overrides § V.B. This provision reads:

SECTION IV. ADDITIONAL USE REQUIREMENTS

A. *Accessory Structures and Uses*

Subject to all other provisions of this ordinance not in conflict with this subsection A, the following accessory structures and uses are permitted.

(1) *Accessory Structures in the Residential Districts:*

(d) Tennis court....

Landowners assert that the language of § IV.A. renders it supreme over all other provisions "not in conflict with this subsec-

tion A," and, therefore, a tennis court must be permitted in residential districts, conflicting provisions notwithstanding.

However, even if landowners' interpretation of § IV.A. is sound, it does not give them license to build a tennis court on any given location in any given lot. At best, this provision says that a tennis court structure is "permitted" in "Residential Districts." This general sanction does not speak to the permitted location of particular structures on particular lots. That is the subject of § V. Because these two provisions focus upon different subjects, they are "not in conflict." A plain reading of § IV.A. reveals that § IV.A. is "subject to" provisions which are "not in conflict." As § V. is "not in conflict" with § IV.A., we find § IV.A. is "subject to" § V. Therefore, we must enforce the setback requirements of § V.B.

■ Landowners raise the related argument that no tennis court could be placed on their lot under the difficult requirements of § V. Landowners assert that a tennis court must be placed on a north/south axis on relatively level ground. Due to the location of their house, and the hilly topography, small size, and odd shape of their lot, no north/south orientation of a tennis court is possible without major encroachments upon the required yards.

Our answer to this "necessity" argument is simple: not every lot, even in Ladue, is a buildable lot. It is elementary that not every odd scrap of land in an unrestricted commercial district is suitable for a skyscraper, even though a skyscraper may be a "permitted use." Likewise, even though § IV.A. permits tennis courts in residential districts, it is the proposed owner's burden to find a buildable lot. To take advantage of the City's permitted use, a tennis enthusiast must find a lot with less hills, larger acreage, or a more conventional shape.

Judgment affirmed.

SMITH, P.J., and WHITE, J., concur.